IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

STEVEN KENDEL, Individually and as　　*
Administrator of the Estate of PATRICIA　*
ANN KENDEL, Deceased, SARAH KENDEL,　*
MELISSA BROCK and JAMES BROCK, as　*
Guardian and Next Friend of BRENDON　*
BROCK and CALIEY BROCK,　　　　　　*
　　　　　　　　　　　　　　　　　　*
　　　　　　　　Plaintiffs,　　　　　*
　　　　　　　　　　　　　　　　　　*
vs.　　　　　　　　　　　　　　　　*　　No. 4:09CV00040 SWW
　　　　　　　　　　　　　　　　　　*
ZURICH AMERICAN INSURANCE　　　　　*
COMPANY,　　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　　　*
　　　　　　　　Defendant.　　　　　*

**Memorandum Opinion and Order**

Plaintiffs filed this complaint on January 21, 2009, seeking a review of defendant's decision to deny them benefits under an insurance policy offered through the deceased's employer. Plaintiffs' claim is covered by the provisions of the Employee Retirement Income Security Act of 1974 (as amended), 29 U.S.C. § 1001 *et seq.* ("ERISA"). The administrative record has been filed with the Court and the parties have filed their briefs. For the reasons stated below, the Court finds that the decision to deny benefits should be affirmed.

**Background**

Ms. Patricia Kendel, the deceased, was an employee of Sprint Corporation ("Sprint"). She lived in Fort Worth, Texas. Ms. Kendel began seeing Dr. Paul Cho in February 2006 for treatment of headaches, tinnitus, loss of balance, and neck and back pain. Dr. Cho diagnosed a herniated disc and pseudarthrosis of the L5-S1 requiring a revision of a prior fusion at that level. He scheduled surgery for April 24, 2006. Administrative Record ("AR") at DEF00324, DEF00339, DEF00367-00377. The

surgery itself was uneventful, and Ms. Kendel went to the recovery room in stable condition. AR at DEF00184. While in the recovery room, she was given the drug Mivarcurium, a paralytic agent and muscle relaxant. AR at DEF00185-00186. The administration of Mivarcurium was an error, as the drug Romazicon had been prescribed. AR at DEF00185. Romazicon is a drug used to arouse patients sedated with benzodiazepines. AR at DEF00186. Ms. Kendel went into respiratory arrest almost immediately and a Code Blue was called. AR at DEF00086. She was taken to another medical facility and given emergency medical care. *Id.* Ms. Kendel died in the hospital on April 28, 2006. AR at DEF00185. The autopsy report concluded that her death was the result of anoxic encephalomalacia, resulting from respiratory paralysis, caused by post-operative institution of Mivarcurium. AR at DEF00064. It appears to be undisputed that Ms. Kendel's death was caused by the medication error.

Defendant Zurich American Insurance Company ("Zurich") issued a group insurance policy to Sprint, providing benefits to Sprint's employees and their beneficiaries, including, but not limited to, accidental death benefits. The policy was in force and effect at all times relevant hereto. Ms. Kendel was a covered person under the policy, and her beneficiaries are her adult children and Brendon and Caliey Brock. On behalf of the beneficiaries of the accidental death policy, and in his capacity as administrator of Ms. Kendel's estate, Steven Kendel submitted a timely claim for benefits. Zurich denied the claim as well as a subsequent appeal.

Plaintiffs argue the decision to deny benefits should be reversed because Ms. Kendel's death was covered under the policy. Zurich contends her death was not an "accident" and, even if it were, it falls under exclusionary language of the policy.

**Standard of Review**

The Supreme Court has stated that "a denial of benefits challenged under [20 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). If the plan confers such discretionary authority, then the Court must defer to the determination made by the administrator or fiduciary unless such determination is arbitrary and capricious. *Id. See also Lutheran Med. Ctr. v. Contractors, Laborers, Teamsters and Engineers Health and Welfare Plan,* 25 F.3d 616 (8th Cir. 1994).

It is undisputed that the policy gave Zurich discretionary authority over determinations concerning eligibility for benefits and construal of the policy's terms. Plaintiffs argue that because Zurich is both the administrator of the policy and the entity that pays the claim, it is operating under a conflict of interest, which lessens the discretion the Court should give Zurich's decision.

Regardless of the presence of a conflict of interest, the abuse-of-discretion standard remains the appropriate standard of review for evaluation of an ERISA fiduciary's decision. In evaluating such a decision, however, a court should take various "case-specific" factors into consideration, "considering the conflict as one factor to determine whether the administrator abused its discretion." *Chronister v. Unum Life Ins. Co. of America,* 563 F.3d 773, 775-76 (8th Cir. 2009)(quoting *Metropolitan Life Ins. Co. v. Glenn,* ___ U.S. ___, 128 S.Ct. 2343, 2351 (2008)) and citing *Wakkinen v. UNUM Life Ins. Co. of America,* 531 F.3d 575 (8th Cir. 2008).

Plaintiffs argue the case-specific inquiry announced in *Glenn* requires that some discovery be conducted in order to determine whether a financial conflict-of-interest motivated Zurich's decision to deny benefits. "[T]o ensure expeditious judicial review of ERISA benefit decisions and to keep district

courts from becoming substitute plan administrators, the district court should not exercise [the discretion to allow the parties to introduce additional evidence] absent good cause to do so." *Donatelli v. Home Ins. Co.,* 992 F.2d 763, 765 (8th Cir. 1993). In *Chronister*, the court recognized the discovery limitations in ERISA cases and noted it was not faced with determining whether *Glenn* changed those limitations. 563 F.3d at 775 n.2. A plaintiff must show good cause to permit limited discovery in an ERISA case where no conflict is apparent from the administrative record. *Menz v. Proctor & Gamble Health Care Plan,* 520 F.3d 865 (8th Cir. 2008).

The administrative record presents no apparent conflict. Plaintiffs argue, nonetheless, that ambiguous language, misplaced reliance on cases, failure to rely on other cases, and reference to definitions not contained in the policy constitute evidence of a conflict of interest that should weigh heavily against Zurich's decision to deny benefits. Unlike in *Chronister*, here there is no evidence in the administrative record that Zurich failed to follow its own claims-handling procedures much less that it has a history of biased claims administration. *See also Elder v. Life Insur. Co. of North America,* 2009 WL 367701 *4 (E.D. Mo. February 11, 2009)(where record shows evidence of procedural irregularities some discovery required). The Court finds plaintiffs fail to establish good cause for ordering discovery in this case.

**Discussion**

The policy in question is titled "Group Accident Policy," and "provides accident coverage only." AR at DEF00005. Coverages is defined in Section I as "the losses for which this Policy provides benefits. The Coverages included in this Policy are listed on the Schedule and are attached to the Policy." AR at DEF00006. The Schedule lists Coverages for Accidental Death and Accidental Dismemberment. AR at DEF00009, DEF00011-12. The Accidental Death Benefit provision

provides:" If a Covered Person dies as a result of an Injury, We will pay the Principal Sum." AR at DEF00011. "Injury" is defined as "a bodily injury directly caused by accidental means which is independent of all other causes, results from a Hazard, and occurs while the Covered Person is insured under this Policy." AR at 00006. Section II - Exclusions & Limitations provides, in pertinent part, "A loss shall not be a Covered Loss if it is caused by, contributed to, or resulted from: . . . 4. Illness, disease or infection." AR at DEF00006.

Zurich determined that Ms. Kendel's death was not caused by an accidental injury, and in the alternative, that her death from treatment received in a hospital for an illness or disease is excluded from coverage. Plaintiffs argue the policy is ambiguous, and that critical terms such as "accidental death" are not defined. They cite *Delk v. Durham Life Ins. Co.,* 959 F.2d 104 (8th Cir. 1992), for the proposition that if, after applying standard rules of construction, ambiguities still remain, those ambiguities should be construed in favor of the insured. In *Finley v. Special Agents Mut. Ben. Ass'n,* 957 F.2d 617, 619 (8th Cir. 1992), the Eighth Circuit held that the common rule of construction that ambiguous language in an insurance policy is construed against the insurer has no place in the construction of an ERISA plan. Further, the rule of *contra proferentem*,[1] which plaintiffs urge the Court to invoke, "is only applied when courts undertake de novo review of plan interpretations . . . " *Stamp v. Metropolitan Life Ins. Co.,* 531 F.3d 84, 93 (1st Cir. 2008). The Court now reviews the determination to deny benefits made by Zurich.

In support of its decision to deny benefits, Zurich cited *Senkier v. Hartford Life and Accident Ins. Co.,* 948 F.2d 1050 (7th Cir. 1991), *Thomas v. AIG Life Ins. Co.,* 244 F.3d 368 (5th Cir. 2001),

---

[1]The *contra proferentem* doctrine holds that policy terms must be strictly construed against the insurer and in favor of the insured.

*Carson v. Metropolitan Life Ins. Co.,* 72 F.Supp.2d 725 (W.D.Tex. 1999), and *Southern Farm Bureau Life Ins. Co. v Moore,* 993 F.2d 98 (5th Cir. 1993). AR at DEF00048-51 and DEF00165-168.

In *Senkier*, the insured was admitted to the hospital for treatment of Crohn's Disease. A catheter, which was inserted into a vein in order to provide supplemental nourishment, became detached from its intended position and punctured the decedent's heart, ultimately causing her death. 948 F.2d at 1051. The accidental death policy excluded not only sickness or disease but also medical or surgical treatment of a sickness or disease. The court determined that the catheter's unintended movement was part of the treatment:

> Any time one undergoes a medical procedure there is a risk that the procedure will inflict an injury. . . . The surgeon might nick an artery; might in fusing two vertebrae to correct a disk problem cause paraplegia; might in removing a tumor from the patient's neck sever a nerve, so that the patient could never hold his head upright again. A simple injection will, in a tiny fraction of cases, induce paralysis. An injection of penicillin could kill a person allergic to the drug. A blood transfusion can infect a patient with hepatitis or AIDS. All these injuries are accidental in the sense of unintended and infrequent. But they are not 'accidents' as the term is used in insurance policies for accidental injuries. The term [accident] is used to carve out physical injuries not caused by illness from those that are so caused, and while injuries caused not by the illness itself but by the treatment of the illness could be put in either bin, the normal understanding is that they belong with illness, not with accident. . . .
>
> . . .
>
> Medical treatment is often risky and when the risk materializes and the patient dies we do not call it dying in or because of an accident; it is death from sickness. . . . There are blameless ("inevitable") accidents and blameworthy accidents; blameworthiness does not make an untoward event 'accidental.'

*Id.* at 1051-53. Here, as in *Senkier*, death was caused by intended medical treatment for an illness or disease.

In *Thomas v. AIG Life Ins. Co.,* 244 F.3d 368 (5th Cir. 2001), the plaintiff suffered from morbid obesity and had two stomach stapling surgeries to treat the disease. Following the second surgery, the plaintiff's sutures broke and he died from sepsis. Under the accidental death insurance policies, his

wife was entitled to benefits if the plaintiff suffered a "'loss resulting from injury.' The policies defined injury as 'bodily injury caused by an accident . . . resulting directly and independently of all other causes . . .' Excluded from the policies were 'diseases of any kind' and 'bacterial infections except pyogenic infections which shall occur through an accidental cut or wound.'"*Id.* at 369. The court upheld the decision to deny benefits finding "no principled basis on which to disassociate Mr. Thomas' iatrogenic injury from the disease complications of his obesity. As in *Senkier*, his death was the foreseeable result of treatment for his disease." *Id.* at 370. In another case cited by Zurich, the insured underwent an anesthesia-based drug detoxification procedure, and while coming out of the anesthesia, suffered an adverse reaction and eventually vomited an aspirated matter into his breathing passage. He became semi-comatose and eventually died after being removed from life support. The insured's accidental death policy excluded from coverage deaths "'in any way [resulting] from or caused or contributed to by' physical or mental illness, diagnosis of or treatment for the illness." *Carson v. Metropolitan Life Ins. Co.,* 72 F.Supp.2d 725, 728 (W.D.Tex. 1999). The policy did not define "accident." The court held "that where a patient is hospitalized for a physical or mental illness and dies as a result of any treatment for that illness, there can be no recovery for accidental death benefits where death as a result of illness is excluded." *Id.* at 729. The court further stated its holding would be the same even for deaths resulting from medical malpractice.

Lastly, in *Southern Farm Bureau Life Ins. Co. v. Moore,* 993 F.2d 98 (5th Cir. 1993), the court upheld the denial of accidental death benefits where the deceased died when he lost control of his vehicle, and it crashed into a building and burst into flames. An investigation determined that the deceased had been suffering from a brain tumor which caused or contributed to his death. The policy covered "bodily injury caused by an accident resulting directly and independently of all other causes of loss covered by [the] policy." *Id.*, at 100. The policy also contained the following exclusion: "A loss

7

that is the result of or contributed to by one of the following is not a covered loss even though it was caused by an accidental bodily injury: (1) A disease or infirmity of the mind or body." *Id.*

Plaintiffs argue *Senkier, Thomas, Carson,* and *Moore* are distinguishable because the policies specifically excluded medical treatment or complications from medical treatment, and there was a direct relationship between the complication and the underlying condition. Here, they argue, there was no relationship between the surgery and the mistake in medication.

> To determine whether a plan administrator's decision was arbitrary and capricious, we ask whether the decision to deny ... benefits was supported by substantial evidence, meaning more than a scintilla but less than a preponderance. Provided the decision is supported by a reasonable explanation, it should not be disturbed, even though a different reasonable interpretation could have been made. The requirement that the [plan administrator's] decision be reasonable should be read to mean that a decision is reasonable if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision.

*Midgett v. Washington Group Intern. Long Term Disability Plan,* 561 F.3d 887, 897 (8th Cir. 2009) (internal quotations and citations omitted). The Court finds Zurich did not abuse its discretion in interpreting the facts in light of the language of the policy. It was not arbitrary and capricious for Zurich to find that Ms. Kendel's death was not caused by accidental means, or that the policy excluded benefits because her death was caused by, contributed to, or resulted from an illness, disease or infection. Her scheduled surgery was necessitated by her herniated disc and pseudarthrosis of the L5-S1, and her death was a result of treatment for that medical condition.

**Conclusion**

For the reasons stated, the Court hereby affirms the decision denying plaintiffs benefits.

DATED this 21st day of September, 2009.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE